May it please the court, Oswald Parada for Petitioner Eric Sanford. Mr. Parada. The district court dismissed Mr. Sanford's Pro Se Section 2254 petition as being untimely by five days, despite the fact that Mr. Sanford alleged two extraordinary circumstances which could have warranted equitable tolling, specifically extraordinary attorney misconduct and mental illness. Okay, counsel, I've got a different question. Mr. Sanford alleged in his own Pro Se papers that he did not receive the notification of the California Supreme Court until July 6th. I did not see that argument addressed by the district court. The government missed it in its reply to Mr. Sanford's filing. I didn't see anything in your briefs. Are you telling us that you're not relying on that and that he received it before then? Do we know that this is not true? Because this would be of concern to me if I thought that he had not received notification of the California Supreme Court's denial of his appeal until after the date. My understanding is that on August 18th of 2010 is when the California Supreme Court denied the petition for review. No, I'm talking about the one the petition was denied on June 27th, 2012. That's the date on the one his last seven, that's when his last seven days start running. That's correct, Your Honor. And he says, I didn't get notice of that until July 6th. I didn't get notice until after it was too late. But if he doesn't know that the California Supreme Court has denied his petition, how is he supposed to file it? No, I understand that, Your Honor. I believe he didn't, I believe he was notified of it because he went ahead and filed his 22 days notice. He did. He filed it within days, but he was already too late. By the time he learned that California, by the time California served him in prison, he received it in the prison mail, this is what he says. It was already too late. He was done. That's correct, Your Honor. But he was late by five days when he finally came in. I understand that. But he could not have filed it on time once he learned that California had denied it, because California didn't alert him to that fact until after it was too late. Whereas he didn't learn of it on the day on which California, he wasn't, he didn't have electronic filing. Right. There's no way he could have known on the day that it was filed. Right. Yes. Is this a, should this be of concern to this Court? I don't believe so, because when we're talking about statutory tolling, that end time after the California Supreme Court denies the final habeas petition, the clock begins to run again. And so there's not going to be any statute. Right. But if he doesn't know that, how is he supposed to file this? He was pro se. Right. And I understand that. But as soon as he was able to find out about it, he went ahead and filed it. Right. But he's too late. By the time he found out about it, it was already, he could have filed it two seconds later. He would have been, he would have been days late. It didn't matter. That's true, Your Honor. Well, can California just, just not mail it to him at all? No, California can't not mail it to him. So what's the obligation on somebody who's in prison to figure out when California has denied, the California Supreme Court has denied his petition, so the clock starts to run again? They're supposed to, as soon as they get notification, that's when it's time for them to go ahead and react. As soon as who gets notification? As soon as the defendant gets notification. So you're telling us that the time is told until, until he receives the mail notification? No, Your Honor. I don't believe that the time is told. I don't think that there is any tolling concept or any tolling authority that would allow. And you're not willing to argue that there should be? No, I think that what we're talking about is a petition that was filed five days late. He was never, under the EDPA, he's supposed to have a whole year to go ahead after the finality. Well, now you're, you're basing your argument about equitable tolling primarily on his mental incapacity. Is that your number one reason? That's the number one reason, yes. And it should have, there should have been. And what is the showing with respect to that? Well, the showing is in the initial petition that he filed, he did allege that he had a documented background of mental health, mental health problems. Going back to when? That's the original petition, the 2254 petition that he filed. So it was, it was not a specific allegation. It was a big allegation there. But in response to the, the motion to dismiss, he supplemented that by letting the court know and providing documentation that he was in the mental health disability placement program, that he was taking medication as part of his treatment plan, that the medication had adverse effects, including dizziness, sleepiness, the inability to comprehend and focus, and that he had been treated by mental illness since he was 10 and he was in the youth authority. Then in the objections to the R&R, he further supplements it by additional documentation, which shows suicide attempt at age 10, another attempt at age 14, that he had adjustment depressive disorder in May of 2009. He had been prescribed with different types of medication, such as Abilify. But continuing until what time? Until, until the time he actually filed here? That's correct, Your Honor. Well, the problem I have with that is that he was able to file on November 9th, 2011 for his first state habeas. He filed a second state habeas on December 30th, 2011. If he was sufficiently mentally able to make those two filings, how can he be regarded as unable to make this file? Well, what we have to look at is the time period in which, after he received the documents, he had seven months from the time he received the file from his appellate lawyer to go ahead and file. We know that he was under the medication and did have the mental health illness. We also know, and there's an uncontroverted statement by petitioner, that he did attempt suicide in 2011 during the relevant time period by attempting to set himself on fire. So if we, all we need is five days here. If we believe that, or if there's documentation to support that he was incapacitated, at least in, with respect to the suicide attempt during the relevant time period, then we can have our five days at home. But we have, we have cases, do we not, that tell us that a stronger showing than that is necessary? What about Bills? What does Bills say? Well, Bills talks about the mental illness. It also talks about the, either the inability to know about the timely filing here. It was clear that he was... It says, I've got it, I'll quote, Petitioner was unable rationally or factually to personally understand the need to timely file. Is there evidence of that? No, I believe that the letter from the lawyer is clear that he knew what his deadline was. Or, okay, then, or Petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate his filing. And that's the part that I'm relying on, Your Honor, because I think if you look at... How can you make that with a straight-faced argument? As with the straight-faced counsel, he filed it immediately. He filed it regularly. He files it filing a pro se. The guy was very adept and very much aware of his deadlines. Seven months after he received the documents, and we don't know what happened during that seven-month period, we know that there is an incontroverted statement, an uncontroverted statement, that he attempted suicide at that point. Are you asking, are you asking the court, are you telling, suggesting the court that he gets 365 good days of his life and that if he was, if he was mentally incapacitated for a week during there, that we should get, attack another week on there? If he was mentally incapacitated... For just one week, one week at any time during the 365 days. Then he wouldn't have been five days late, didn't he? No, that, of course, that's not the, that's not the way life gets lived, counsel. We all have, we all have deadlines, and some of us end up with the flu and we're incapacitated for a couple of days, and we don't tack additional days, days on unless it occurs right at a critical time. But we don't know that because the court didn't, did not allow the opportunity to factually develop the record. Well, except that we can see that he filed the, the, the, the petition immediately, within, within days after he received notification from the California Supreme Court. He was, he was waiting, he was waiting for this notice and had it all ready to go. That's correct. That doesn't sound like somebody who's mentally incapacitated. But he only had seven months of that one year AEDPA statute of limitations period to file because the lawyer didn't provide him with the information in a timely matter. The lawyer had the... Okay, well, that's not the mental argument. That's the argument about the, about the incompetence of counsel. But there's often a delay in getting records and, and, and back and forth with the, with the, with the counsel. I mean, that's just, that's just not unusual. And he had months and months and months. That's correct, Your Honor. But here, counsel never made an attempt to send him to notify the client of the, the decision from the California Supreme Court denying the petition for review. He sent the documents to the client's mother and he didn't check the inmate locator site to find out exactly where the inmate was. It was very easy for him to do that. He did when he found out that he was in Lancaster, but there was never any indication that he was in Corcoran. In fact, page 77 of the excerpt of record is a document which shows that Mr. Sanford went straight from Chino Men's Prison, the reception center, straight to Cal State, or I'm sorry, to the prison in Lancaster. So there was never any time that he was in Corcoran. And so I think that's another factor that weighs in favor of the egregious attorney's conduct. Less than 30 seconds. I'd like to reserve my time. You may, you may reserve your time, counsel. We'll hear from the government. Good morning, Your Honors. Viet Nguyen for Respondent at the Warden. And I'd first like to address, I guess, Judge Bybee's concern about the notification of the denial of this California Supreme Court habeas petition. And again, I don't think it's just an extraordinary circumstance that he was notified a week or two later after it's been denied. Well, it doesn't, it doesn't seem unusual at all to me. I mean, it sounds like ordinary delay in getting, in getting mailed to prisoners. The question is, is he, is he accountable for that? When he can't figure, how is he supposed to figure out that California is going to deny his habeas? Well, under the equitable tolling standard, it has to be an extraordinary circumstance. And I think, as you just said, it's, it's, it's a usual circumstance that he gets notified one or two weeks later. And there, I don't think equitable tolling is warranted. When he's, when he's pro se, how is he supposed to figure this out? Is he supposed to call every day to the, can he, is there a number he can actually call from prison every day? I don't know exactly how the prison law library works, but I guess in this case, he had that seven months and he actually waited for, I guess, I think four or five days. Just sort of his own fault that he, that he waited, waited that long. Well, it's the lack of diligence. He waited all the way until he only had a couple of days left of the time period to actually file. And then he starts to file in Superior Court when his, I guess Mr. Allen, his appellate attorney, told him that if he were to file a Federal petition, he should file a habeas petition in the California Supreme Court. And he just did not do so. He decided to litigate his claim. When he made, when he filed his pro se petition, he referenced this problem. And in the government's, in the State's response to him, the State blew through it. It didn't make any reference to it. And the district court made no reference to it. Should the district court have addressed this? The, I think, I mean, you've told us, you told us that it's not extraordinary circumstances. Well, that's wonderful, but we don't have any court ruling on that. We don't have any inquiry. We don't even know whether, whether he's telling us the truth. We're, I'm just assuming that if he told us the truth, and it doesn't seem implausible that he's telling us the truth, that maybe that should have been addressed. But neither the State nor the district court addressed it. I guess I'm unclear if you, whether you're talking about whether this is a claim for equitable tolling or statutory tolling. Again, if it's equitable tolling, I don't think it's an extraordinary circumstance because it's general, it's a general matter that he gets notified by mail and it takes time to get notified of his denial. If it's a claim for statutory tolling, there's the mailbox rule for a pro se defendant, but it's to mail it to the court. I don't think it's ever been applied in the reverse, whether he gets the denial and the mailbox rule gets applied towards the, the court's denial of the petition. Moving on to my second point, whether a petitioner is entitled to equitable tolling for his mental impairment. I think the record is clear that he, he doesn't meet the bill's test. He understood the, understood the, the need to timely file. He recognized so in his letter to appellate counsel, and also he did so in the petition itself. So under bills, I think he doesn't pass the first step, which is he didn't understand the need to timely file. And the record is also pretty clear that on November 9th, before the statute had expired, he was able to file a state court petition. So I think he isn't entitled to equitable tolling based on his mental impairment. I think in sum, the equitable standard tolling is the high bar and it requires that petitioner show that it was impossible for him to file a petition on time. And I think on this record, petitioner cannot show that. And unless the court has a meeting. No further questions. Thank you, counsel. Mr. Parada, you have a little bit of time left. I just want to point out that at the time of the commission of the crime, he was 15 years old. He was tried as an adult and convicted at age 17. By the time he got to state prison, and I think he was probably 20 years old. He currently is, I believe, only 25 years old. So when we factor in his youth, the mental health issues, the suicide attempts, and all of the medication that he was taken, I believe that does warrant at a minimum further factual development of the record. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in Godoy versus Spearman.
judges: O'scannlain, Fisher, Bybee